IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WENDY C.[1],

       Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

       Defendant.

Civ. No. 6:19-cv-97-MC

OPINION AND ORDER

MCSHANE, Judge:

       Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for supplemental security income and disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On November 15, 2015, Plaintiff filed an application for benefits, alleging disability as of April 20, 2013. Tr. 13.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 13-26.

       Plaintiff argues the ALJ erred in finding her not credible and in rejecting the opinion of her treating psychologist, treating therapist, and the lay opinion of her partner. The Commissioner acknowledges these errors, but argues the Court should remand the matter for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in the case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

further proceedings rather than an award of benefits. The Court disagrees. Because the ALJ made numerous errors, and because the record clearly reveals Plaintiff is disabled under the Act, the Commissioner's decision is REVERSED and this matter is remanded for an award of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC),

age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ concluded Plaintiff suffered from the following severe impairments: migraines, moderately severe left ulnar neuropathy, generalized anxiety disorder, and depression. Tr. 16. Although Plaintiff's anxiety and depression clearly limit Plaintiff, the main impairment relevant to this appeal is Plaintiff's migraines. Plaintiff's migraines are well-documented throughout the nearly 1000-page record. At the December 2017 hearing, Plaintiff described her migraines:

> There's not just pain. Sometimes you can have a migraine that doesn't even have pain, but it will last for a couple of days. It's like flue like symptoms and I'm learning more about migraines because they're so—each one could be different and I didn't even realize you could have a migraine without pain.
>
> * * * *
>
> It goes anywhere from six to twelve a month and they're very—it sort of—in a way it's kind of like having a panic attack. They cause a lot of fatigue and exhaustion, so it's more than just the actual day of having the migraine. It's usually the day after. It causes a lot of fatigue and sometimes even two days and it causes a lot of sensitivity to light and especially noise with me, so I'm sensitive to that usually before and after I have one.

Tr. 45.

Plaintiff also described the effect of medication on her migraines:

> With the Amerge, it worked differently and I generally had to go take an Amerge and go to sleep because that was just the way the Amerge worked. The Zolmitriptan works a little bit differently. If I take it right away, sometimes it gets rid of the migraine right away and sometimes it doesn't depending on the migraine, but usually if the pain goes away, I still have the extreme sensitivity to noise and light, which makes it difficult to go out. When there was the headache specialist, I was able to get nerve block shots, but I could possibly still do that with a neurologist, but there isn't a migraine specialist right now.

Tr. 47.

Plaintiff testified that on average, her migraines would make her "pretty much . . . non-functional" seven times each month. In finding Plaintiff less-than fully credible as to the extent of her limitations, the ALJ found:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence partially supports the claimant's alleged impairments.[3]
>
> The claimant testified she was unable to work due to migraines. She testified that her depression and the medication she is on make her fatigued. She does not know how she will feel when she wakes up in the morning and finds it difficult to stay motivated. The migraines last for days without pain but with flu like symptoms and sensitivity to light the day after. The claimant testified when she was working, the more stress she was under the more anxious and depressed she became. Adjustments to her medications made her memory and reaction time worse. However, the claimant has been in treatment during the period in question with both medical and mental health providers.[4] Moreover, the claimant has been able to regulate her psychological symptoms with a combination of therapy and medication. Although, [sic] her symptoms waxed and waned, her symptoms were able to come under control with modifications to her medications when necessary. Furthermore, the claimant's migraine headaches have been under better control with medication to include nerve blocks. She testified that her migraine symptoms last for days without pain, but flu like symptoms with fatigue and sensitivity to light afterward. In addition, the claimant testified she was able to work from home as an editor and was a tutor during the period.[5] The claimant reported being able to perform housework such as laundry, dishes, cleaning, sweeping, and mopping. She also reported writing, blogging, and making jewelry,

---

[3] The Court presumes this is a typo. First, Plaintiff's claims were not inconsistent. Second, the Court presumes the ALJ meant to imply that Plaintiff's alleged limitations were not consistent with the record as a whole. As discussed below, to the extent the ALJ made that finding, it is not supported by substantial evidence in the record.

[4] The record reveals that during the time in question, Plaintiff had nearly one hundred medical appointments. That Plaintiff regularly and consistently saw a primary care physician, a neurologist (for her migraines), a psychologist, and a mental health provider is not a clear and convincing reason for finding her not credible for alleged limitations from symptoms which led to those medical appointments. In fact, Plaintiffs regular and consistent medical appointments demonstrate the opposite; that her symptoms, resulting in nearly 100 medical appointments over several years, were in fact debilitating.

[5] While technically true, this misstates the record. Plaintiff earned "about $560" during her "brief editorial job." Tr. 38. Plaintiff quit soon after starting because "it was too much for me to keep track of[.]" Tr. 39. During a "very short" job of tutoring one boy once or twice a week after school, Plaintiff made "maybe $300." Tr. 38. "It was only for a couple of months and either I was sick or unable to go or sometimes it would be cancelled because he would have activities with school." Tr. 39. Neither of Plaintiff's brief, unsuccessful attempts at flexible employment are inconsistent with her testimony that, several times each month, migraines render her unable to unable to function.

4 – OPINION AND ORDER

which are very similar to work activity.[6] Therefore, the undersigned finds the claimant's characterization of her impairments is inconsistent with the medical evidence of record and controlled with medication.

Tr. 22 (internal citations omitted).

Where, as here, there is no evidence of malingering, the ALJ may only reject the claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). As recognized by the Commissioner, the ALJ did not provide clear and convincing reasons for finding Plaintiff less-than fully credible as to the extent of her limitations.[7] The ALJ admits the errors were harmful.

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

---

[6] Again, none of Plaintiff's daily activities are inconsistent with her testimony.
[7] As described above, the Commissioner concedes the ALJ also erred in giving little weight to the opinions of plaintiff's psychologist and mental health therapist, and in considering the lay witness evidence from Plaintiff's partner.

5 – OPINION AND ORDER

This is a rare instance where remand for an award of benefits is appropriate. As noted, Plaintiff testified that on average, symptoms from her migraines—whether from pain, fatigue (from either the migraine itself or from medication to alleviate the migraine), extreme nausea, or sensitivity to light—rendered her "non-functional" approximately seven days each month. Tr. 45-46. Plaintiff's migraines are detailed in nearly 100 treating visits during the relative time period, including many appointments with a neurologist. Although medication at times reduced Plaintiff's migraines, the record indicates that even during those time periods, Plaintiff would miss more than two days each month due to symptoms from her migraines.

The ALJ, however, focused on temporary periods where Plaintiff had limited relief from migraines. For example, the ALJ noted that "in October 2016, the claimant reported a remarkable decrease in the frequency of her migraines. At this time she was on hormone replacement therapy and noted her migraine systems were worsen [sic] after the progesterone was done. As a result, she was placed on continuous progesterone for migraine management (Exhibit 20F/3)." Tr. 21. In October 2016, Plaintiff had been on hormone therapy for one month and reported to her psychologist, "The positive thing is that I've only had two migraines, so at this point it's definitely helping that. Yay!" Tr. 856. Any relief, however, was short lived. Just two weeks later, Plaintiff's rheumatologist noted, "She was started on hormone therapy to see if this would help her migraines. She notes this has only mildly improved her headaches." Tr. 759. One month later, Plaintiff's neurologist noted, "Headache frequency is 13-15 per month. Here too she is not sure. She has tried hormonal changes, which initially seemed to help, but her headaches seem to be increasing again. She is experiencing variable periods and does have permenstrual headaches in addition to other headaches." Tr. 923.

The ALJ also understated Plaintiff's migraines. For example, in pointing to a February 2017 note from Plaintiff's psychologist, the ALJ noted Plaintiff's "condition was reasonably well controlled with [medication]. . . . The Claimant had good results when keeping her routine simple and predictable (Exhibit 23F/30)." Tr. 21. The record cited by the ALJ indicates Plaintiff's depression and anxiety were controlled with medication "as long as life is kept simple[.]" Tr. 853. Additionally, the psychologist noted "Panic Disorder without Agoraphobia – for the most part panic attacks are well controlled but have increased with stress[.]" Tr. 853. Importantly, the record also notes the psychologist's impression: "Migraines – managed by her PCP *and not well controlled with a frequency of an average of 10 per month*[.]" Tr. 854 (emphasis added).

Once again, in pointing to an April 2017 note from Plaintiff's psychologist, the ALJ found, "In addition, there was a positive effect on the frequency of her migraines with Wellbutrin and she would continue with the dosage (Exhibit 23F/23). Tr. 21." The ALJ was correct in finding Wellbutrin resulted in a decrease in Plaintiff's migraines. That treating note states, "in addition the Wellbutrin has made a surprising difference in her migraine frequency so she would like to continue it for this reason as well[.]" Tr. 846. The ALJ erred, however, in overstating the extent Wellbutrin provided relief from Plaintiff's migraines. Although Wellbutrin resulted in a decrease in migraines, the psychologist once again noted Plaintiff's migraines were "not well controlled with a frequency of an average of 10 per month[.] Tr. 847.

The Court notes the above mischaracterizations not to pile onto the ALJ, but rather to demonstrate the record is consistent with Plaintiff's hearing testimony that she typically suffers between 6-10 migraines each month. Additionally, given Plaintiff's credible testimony as to the

symptoms from those migraines, Plaintiff's testimony that she would be "non-functional" approximately seven times each month should be credited as true.

The opinions of Plaintiff's psychologist and therapist also support Plaintiff's testimony. A treatment note from October 2017 is the last record of a visit to Plaintiff's psychologist. At that time, Plaintiff still suffered more than four migraines each month. Tr. 826. As with Plaintiff's depression, the psychologist noted of Plaintiff's migraines: "increase in frequency and severity is typical for patient in response to normal expected life stress." Tr. 826. The psychologist then opined, "She has a simple predictable routine at home that contributes to the control of her depression and anxiety. It is my opinion that [Plaintiff] is not capable of working a full time job without a flare in the anxiety, depression and migraine frequency such that she would miss a substantial days of work."[8] Tr. 826.

While the ultimate question of disability is one reserved for the Commissioner, Plaintiff's psychologist provided a function report (in addition to her general opinion that Plaintiff was unable to work). As relevant here, the psychologist felt Plaintiff had "moderately severe" limitations in "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 724. The form defined a "moderately severe" limitation as one "which seriously interferes with the individual's ability to function in the designated area, and precludes the individual's ability to perform the designated activity on a regular and sustained basis for 8 hours per day, 5 days per week, or a comparable work schedule." Tr. 722.

---

[8] This was not the first time Plaintiff's psychologist commented on Plaintiff's ability to hold down sustained employment. In June 2016, the psychologist wrote, "she has asked me about working full time and it is my opinion that because of the chronic depression and anxiety as well as the migraines she cannot manage the expected and common stress when on works full time." Tr. 869. At that time, Plaintiff suffered 6-12 migraines each month. Tr. 869.

8 – OPINION AND ORDER

In discussing the psychologist's opinion, the ALJ stated, "The undersigned gives little weight to the opinion of Dr. Mitchell, as her mental impairments were controlled with medication and the claimant expressed a desire to work and has worked during the period in question." Tr. 23. As outlined above, these are not specific and legitimate reasons for rejecting the opinion of Plaintiff's longstanding treating psychologist.

Regarding Plaintiff's ability to maintain sustained employment, Plaintiff's mental health therapist believed Plaintiff was even more limited. In the therapist's opinion, Plaintiff had a "severe" limitation in "the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 734. The form defined a "severe" limitation as one "that precludes the individual's ability to function in the designated area. Individual would be 'off task' at work at least 20% of the time." Tr. 732. The therapist also believed Plaintiff had a severe limitation in "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."[9] Tr. 733.

Here, the credit-as-true standard has been satisfied. The record has been fully developed, the ALJ erred in rejecting Plaintiff's testimony and medical opinions, and that evidence, if credited as true, would require the ALJ to find Plaintiff disabled. *Garrison*, 759 F.3d at 1020. Although the Commissioner argues Plaintiff's testimony alone cannot support a finding of disability, that argument is meritless. The ALJ found Plaintiff's migraines are a severe impairment. Tr. 16. Plaintiff's testimony, along with the opinions of her psychologist and therapist indicate symptoms from those migraines would result in Plaintiff missing more than two days of work each month. At the hearing, the vocation expert testified that anyone missing more than two days of work each month would not be employable. Tr. 56. As Plaintiff could not

---

[9] Plaintiff's psychologist believed Plaintiff had a "moderately severe" limitation in this respect. Tr. 723.

sustain gainful employment in any job, remand for additional proceedings would serve no useful purpose.

## **CONCLUSION**

The decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 13th day of April, 2020.

       _____/s/ Michael J. McShane_____
Michael McShane
United States District Judge